UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                    )
BENJAMIN RIGGS, LAURENCE EHRHARDT,  )
and RHODE ISLAND MANUFACTURERS      )
ASSOCIATION,                        )
                                    )
          Plaintiffs,               )
                                    )
     v.                             )   C.A. No. 15-343 S
                                    )
MARGARET CURRAN, PAUL ROBERTI,      )
and HERBERT DESIMONE, JR., in       )
their official capacities as        )
members of the Rhode Island Public  )
Utilities Commission; NARRAGANSETT  )
ELECTRIC COMPANY, INC. d/b/a        )
NATIONAL GRID; and DEEPWATER WIND   )
BLOCK ISLAND, LLC,                  )
                                    )
          Defendants.               )
_____ )

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

Before the Court are Motions to Dismiss filed by Defendant Deepwater Wind Block Island, LLC ("Deepwater Wind") (ECF No. 14)[1] and Defendants Margaret Curran, Paul Roberti, and Herbert DeSimone, Jr., in their official capacities as members of the Rhode Island Public Utilities Commission (collectively, the "PUC Defendants") (ECF No. 21). Plaintiffs filed Oppositions (ECF Nos. 22 and 23), and Deepwater Wind and the PUC Defendants both filed

---

[1] Defendant Narragansett Electric Company, Inc. d/b/a National Grid joined in Deepwater Wind's Motion to Dismiss. (ECF No. 15.)

Replies (ECF Nos. 28 and 29). Additionally, the parties filed post-hearing memoranda. (ECF Nos. 37, 38, 39, and 40.) For the reasons that follow, Defendants' Motions to Dismiss are GRANTED.

I. Background

Plaintiffs are suing the PUC Defendants, Narragansett Electric Company, Inc. d/b/a National Grid ("National Grid"), and Deepwater Wind for injunctive and declaratory relief. They claim that the PUC Defendants violated the Federal Power Act ("FPA"), the Public Utility Regulatory Policies Act ("PURPA"), and the Supremacy Clause and Commerce Clause of the United States Constitution, when they issued an order on August 16, 2010, approving a power purchase agreement ("PPA") between Deepwater Wind and National Grid related to a new wind farm off the coast of Block Island (the "PUC's Order"). According to Plaintiffs, this agreement has above-market costs, which are in violation of the Federal Energy Regulatory Commission's ("FERC") policies, and will result in a significant increase in their electric bills. Prior to filing this action, Plaintiffs twice petitioned FERC to initiate an enforcement action on the grounds that the PUC's Order violated the FPA, PURPA, and the Supremacy Clause of the United States Constitution. FERC declined to act on either petition, and Plaintiffs filed their Complaint in this Court one day short of five years from the date of the PUC's Order, on August 15, 2015. Defendants have moved to dismiss, arguing that the statute of

limitations has expired and that Plaintiffs do not have standing. The PUC Defendants further argue that they are shielded by quasi-judicial immunity.

II. Discussion

The parties first dispute which statute of limitations applies to this action. Deepwater Wind asserts that the Court should apply Rhode Island's three-year personal injury statute of limitations, while Plaintiffs contend that the appropriate limitations period is five years pursuant to 28 U.S.C. § 2462, which they claim applies to the "enforcement of federal statutes." (Pls.' Opp'n to Deepwater Wind's Mot. 12, ECF No. 22.)

As an initial matter, Plaintiffs' § 1983 claims are clearly governed by the three-year statute of limitations. See, e.g., Rodriguez v. Providence Police Dep't, C.A. No. 08-03 S, 2011 U.S. Dist. LEXIS 2657, *10 (D.R.I. Jan. 11, 2011) (stating that claims brought under 42 U.S.C. § 1983 are "subject to Rhode Island's three-year statute of limitations for personal injury actions"). The other causes of action present a closer question, but, ultimately, for the reasons outlined below, the Court agrees with Defendants that the Rhode Island personal injury statute of limitations should apply to those claims as well.

"When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent

3

with federal law or policy to do so." Barrett ex rel. Estate of Barrett v. United States, 462 F.3d 28, 38 (1st Cir. 2006)(quoting Wilson v. Garcia, 471 U.S. 261, 266-67 (1985)). The question here is whether Plaintiffs' claims fall under the federal five-year statute of limitations set out in 28 U.S.C. § 2462, or whether the Court must look to the state law analog.

By its own text, 28 U.S.C. § 2462 applies only to "the enforcement of any civil fine, penalty, or forfeiture," not all federal statutes; and Plaintiffs here do not seek to enforce a "civil fine, penalty, or forfeiture." All of the cases that Plaintiffs cite are either: 1) cases where the parties agreed that the statute of limitations in § 2462 applied;[2] 2) government enforcement actions;[3] or 3) citizens' suits brought to enforce statutes where the citizens "stood in the shoes" of the

---

[2] See Fed. Energy Regulatory Comm'n v. Barclays Bank PLC, 105 F. Supp. 3d 1121, 1131 (E.D. Cal. 2015), as amended (May 22, 2015) ("The parties agree that the applicable statute of limitations is governed by 28 U.S.C. § 2462 . . . ."); Tri-Dam v. Schediwy, 2011 U.S. Dist. LEXIS 146789, *15 (E.D. Cal. Dec. 21, 2011) ("The parties have identified 28 U.S.C. § 2462 as a relevant federal statute of limitations.").

[3] See 3M Co. (Minnesota Min. & Mfg.) v. Browner, 17 F.3d 1453, 1455-60 (D.C. Cir. 1994) (applying § 2462 to an administrative civil penalty case brought by the Environmental Protection Agency); Barclays Bank, 105 F. Supp. 3d at 1131-33 (applying § 2462 to FERC Petition); Fed. Election Comm'n v. Nat'l Right to Work Comm., Inc., 916 F. Supp. 10, 13 (D.D.C. 1996) (applying § 2462 to claim for civil penalties by the Federal Election Commission).

4

government.[4] (See Deepwater Wind's Reply 5-7, ECF No. 29.) This action does not fall into any of these categories. Plaintiffs cite no case in which the § 2462 statute of limitations has been used instead of a state law statute of limitations (absent agreement of the parties) in a case like this.

Simply put, this suit is not an enforcement action or citizens' suit. Plaintiffs' reliance on a statement in FERC's Notice that its decision "means that Mr. Riggs himself may bring an enforcement action against the Rhode Island Commission in the appropriate court" is incorrect. (See Pls.' Post-Hearing Mem. 4, ECF No. 37.) As Defendants correctly note, "[t]his boilerplate language, which is specific to actions under PURPA, does not and cannot alter the true nature of Plaintiffs' complaint: they allege personal injury from violations of federal statutes and the

---

[4] See Trawinski v. United Techs., 313 F.3d 1295, 1298 (11th Cir. 2002) ("Section 2462 by its text is generally applicable to 'proceedings for the enforcement of any civil fine,' and the Trawinskis' citizen suit under the EPCA is precisely this sort of action."); Nat'l Parks Conservation Ass'n, Inc. v. Tennessee Valley Auth., 480 F.3d 410, 414-15 (6th Cir. 2007) (applying the five-year statute of limitations under § 2462 because plaintiff brought suit pursuant to provision in statute allowing citizens to enforce statute to assess civil penalties); Sierra Club v. Chevron U.S.A., Inc., 834 F.2d 1517, 1520-22 (9th Cir. 1987) (explaining rationale for applying § 2462 to citizens' enforcement suits is that "in those suits citizen plaintiffs effectively stand in the shoes of the" government agency and "the citizen plaintiff does not personally benefit from bringing the action"); Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York, 451 F.3d 77, 88 n.14 (2d Cir. 2006) (relying on Sierra Club to apply statute in substantially similar circumstances).

5

Constitution; they do not challenge a FERC order or seek to enforce a FERC requirement." (Deepwater Wind's Post-Hearing Mem. 3, ECF No. 39.) Because Plaintiffs do not seek to enforce a "civil fine, penalty, or forfeiture," the Court finds that 28 U.S.C. § 2462 does not apply, and it must look to an appropriate analog under state law.

Rhode Island law takes an expansive view of "injury":

> [T]he phrase "injuries to the person" . . . is to be construed comprehensively and as contemplating its application to actions involving injuries that are other than physical. Its purpose is to include within that period of limitation actions brought for injuries resulting from invasions of rights that inhere in man as a rational being, that is, rights to which one is entitled by reason of being a person in the eyes of the law. Such rights, of course, are to be distinguished from those which accrue to an individual by reason of some peculiar status or by virtue of an interest created by contract or property.

Commerce Oil Ref. Corp. v. Miner, 199 A.2d 606, 610 (R.I. 1964). The Rhode Island Supreme Court has used this definition of "injury" to apply the three-year limitations period to an action involving utility costs. See Paul v. City of Woonsocket, 745 A.2d 169, 172 (R.I. 2000). In Paul, the plaintiffs contended that a tapping fee for water service connection to the city's water distribution main constituted an impermissible tax. The Court found this to be an economic injury and applied the three-year statute of limitations; in doing so, it rejected the plaintiffs' argument that it should apply the limitations period set out in 9 R.I. Gen. Laws § 9-1-

6

13(a), which provides that "[e]xcept as otherwise specially provided, all civil actions shall be commenced within ten (10) years next after the cause of action shall accrue, and not after." Id. at 172. This Court has likewise used the definition of "injury" established in Commerce Oil to apply the three-year personal injury statute of limitations – rather than the limitations period for a breach of contract - to claims alleged under 42 U.S.C. § 1981, which "prohibits racial discrimination in the making and enforcement of private contracts." Partin v. St. Johnsbury Co., 447 F. Supp. 1297, 1300 (D.R.I. 1978). Furthermore, the First Circuit has applied a state tort law three-year statute of limitations to a PURPA action. See Greenwood ex rel. Estate of Greenwood v. New Hampshire Pub. Utilities Comm'n, 527 F.3d 8, 14 (1st Cir. 2008) ("Greenwood's claim is most analogous to a New Hampshire law claim of tortious interference with contractual relations, that is, that the PUC rescission order interfered with Greenwood's advantageous contractual relationship with PSNH. Such a claim is governed by New Hampshire's general three-year statute of limitations.").

The crux of Plaintiffs' claim is that Defendants' actions will cause them economic injury. There is no indication in § 2462 or the cases cited by Plaintiffs that it would be "inconsistent with federal law or policy," Barrett, 462 F.3d at 38, to impose the three-year Rhode Island statute of limitations for personal

7

injury. Accordingly, the Court finds that the three-year personal injury statute of limitations applies to this action.

The next dispute is when the statute of limitations began to run. Plaintiffs argue that, even if the three-year statute of limitations applies, the period did not begin to run until September 2014 at the earliest — the date that Deepwater Wind obtained the permits needed under the PPA; according to Plaintiffs, this is when the harm became "imminent." Plaintiffs claim they did not have a viable cause of action prior to this date. Yet this assertion appears to be belied by the very first paragraph of Plaintiffs' Complaint, which states what they seek: "a declaration that <u>the PUC's Order dated August 16, 2010</u> . . . violates the [FPA], [PURPA], the Supremacy Clause of the United States Constitution, the Commerce Clause of the United States Constitution, and 42 U.S.C. § 1983." (Compl. ¶ 1, ECF No. 1 (emphasis added).) By Plaintiffs' own admission then, the date of the PUC's Order is the date the harm occurred, and therefore the appropriate trigger date for the statute of limitations.

As noted above, Plaintiffs try to get around this by claiming that the harm did not become "imminent" until September 2014, when Deepwater obtained the permits needed under the PPA; however, they cite no authority suggesting this can be a factor for a statute of limitations (as opposed to standing) analysis, nor do they show that the harm was not imminent when the PPA was approved. Indeed,

the September 2014 event seems somewhat arbitrarily chosen to fit them into the statute of limitations.

At oral argument, Plaintiffs pointed the Court's attention to the Rhode Island Supreme Court's decision in Paul, where a tapping fee was alleged to be an impermissible tax. See 745 A.2d at 172. There, the Court found that because "the alleged personal injury to the plaintiffs was the actual payment of the tapping fee[,] . . . the three-year statute of limitations began to accrue for each plaintiff upon individual payment of the tapping fee." Id. However, as Defendants point out, "the plaintiffs in Paul alleged their injury arose from enforcement of the ordinance requiring them to pay unconstitutional tapping fees. Here, Plaintiffs allege that the entry of the [PUC's Order] alone was the unlawful and unconstitutional action that caused their injury." (Deepwater Wind's Post-Hearing Mem. 11, ECF No. 39 (emphasis in original) (citation omitted)); see Paul, 745 A.2d at 172 ("In the instant matter, the plaintiffs assert that the adoption, implementation and enforcement of the city council's amendment to the 'Water and Sewers and Sewage Disposal' Ordinance caused each of them to suffer a personal injury." (emphasis added)). Moreover, giving such a broad reading to Paul in a case like this would make little sense from a policy or economic perspective. Paul was a fee case that, unlike the present matter, involved no investment of capital or construction of infrastructure. Plaintiffs' reading of Paul would

9

allow a defendant to expend tens or hundreds of millions of dollars constructing a new power plant only to file an action once the first electrical bill is received. This makes no sense.

Alternatively, Plaintiffs argue that the statute of limitations began to run after FERC declined to act on their petition. There is no dispute that the statute of limitations does not begin to run "when administrative remedies must first be exhausted." Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 594 (1st Cir. 1989). The parties submitted supplemental briefing on whether exhaustion was required in this case.

Defendants admit that "certain claims must be raised before FERC," prior to being brought in federal court. (Deepwater Wind's Post-Hr'g Mem. 7, ECF No. 39.) For example, "PURPA requires administrative exhaustion for claims brought by qualified facilities that are attempting to enforce the requirements of § 824a-3(f)." Allco Fin. Ltd. v. Klee, 805 F.3d 89, 96 (2d Cir. 2015), as amended (Dec. 1, 2015). Here, however, "Plaintiffs do not challenge a FERC order or action – nor do they claim that a FERC rule has been violated. They claim that the RIPUC infringed upon FERC's exclusive jurisdiction to set wholesale rates when it approved the PPA." (Deepwater Wind's Post-Hr'g Mem. 8, ECF No. 39 (emphasis added) (citation omitted).) The United States Supreme Court has held that:

10

> [i]t is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. . . . A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.

Freehold Cogeneration Associates, L.P. v. Bd. of Regulatory Comm'rs of State of N.J., 44 F.3d 1178, 1184 (3d Cir. 1995) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96 n.14 (1983)); see also New York State Elec. & Gas Corp. v. Saranac Power Partners L.P., 117 F. Supp. 2d 211, 248 n.72 (N.D.N.Y. 2000), aff'd, 267 F.3d 128 (2d Cir. 2001) ("If a litigant challenges the jurisdiction of a public service commission to act in particular circumstances, the action is not precluded for failure to have sought prior review of the agency's underlying administrative order."). Indeed, as Defendants point out,

> the chief cases relied on by Plaintiffs undermine their exhaustion argument. In both [PPL EnergyPlus, LLC v. Nazarian, 753 F.3d 467 (4th Cir. 2014)] and [PPL EnergyPlus, LLC v. Solomon, 766 F.3d 241 (3d Cir. 2014)], the plaintiffs alleged that the state orders or laws infringed upon FERC's exclusive jurisdiction to set wholesale rates, exactly as Plaintiffs allege here. The plaintiffs in both Nazarian and Solomon filed suit directly in federal court without ever filing a FERC petition.

(Deepwater Wind's Post-Hr'g Mem. 8-9, ECF No. 39 (emphasis in original).)

The cases Plaintiffs rely on to support their argument that exhaustion is required fall into two categories – neither of which applies to this case. First, they cite cases in which the plaintiffs sought review of a FERC order, which pursuant to 16 U.S.C. § 825l may only be done after exhausting administrative remedies. See Mississippi Power & Light Co. v. Mississippi ex rel. Moore, 487 U.S. 354, 375 (1988) ("The reasonableness of rates and agreements regulated by FERC may not be collaterally attacked in state or federal courts. The only appropriate forum for such a challenge is before the Commission or a court reviewing the Commission's order." (emphasis added)); Montana-Dakota Utilities Co. v. Nw. Pub. Serv. Co., 341 U.S. 246, 251-52 (1951) ("We hold that the right to a reasonable rate is the right to the rate which the Commission files or fixes, and that, except for review of the Commission's orders, the courts can assume no right to a different one on the ground that, in its opinion, it is the only or the more reasonable one." (emphasis added)); DiLaura v. Power Auth. of State of N.Y., 982 F.2d 73, 79 (2d Cir. 1992) ("In enacting the FPA, Congress established a system for dealing with complaints to FERC, see 16 U.S.C. §§ 825e–h, and created a special procedure to review FERC's action or inaction." (emphasis added)); Platte River Whooping Crane Critical Habitat Maint. Trust v. Fed. Energy Regulatory Comm'n, 876 F.2d 109, 112-13 (D.C. Cir. 1989) ("Parties seeking review of FERC orders must petition for rehearing of those

orders . . . ." (emphasis added)). Here, Plaintiffs do not seek review of a FERC order, and therefore these cases are inapposite.[5]

The second category is cases brought under PURPA § 210(h)(2)(B), 16 U.S.C. § 824a-3(h)(2)(B). This section provides:

> <u>Any electric utility, qualifying cogenerator, or qualifying small power producer</u> may petition the Commission to enforce the requirements of subsection (f) of this section as provided in subparagraph (A) of this paragraph. If the Commission does not initiate an enforcement action under subparagraph (A) against a State regulatory authority or nonregulated electric utility within 60 days following the date on which a petition is filed under this subparagraph with respect to such authority, the petitioner may bring an action in the appropriate United States district court to require such State regulatory authority or nonregulated electric utility to comply with such requirements . . . .

<u>Id.</u> (emphasis added); <u>see</u> <u>Allco</u>, 805 F.3d at 96 ("PURPA requires administrative exhaustion for claims <u>brought by qualified facilities</u> that are attempting to enforce the requirements of § 824a-3(f)." (emphasis added)); <u>Niagara Mohawk Power Corp. v. Fed. Energy Regulatory Comm'n</u>, 306 F.3d 1264, 1269 (2d Cir. 2002) ("As

---

[5] Moreover, if Plaintiffs were seeking review of a FERC order, they would have had to bring their case in either the District of Columbia or the First Circuit within sixty days of the order. <u>See</u> 16 U.S.C. § 825l(b) ("Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the United States Court of Appeals for any circuit wherein the licensee or public utility to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part.").

13

discussed in section I. A., supra, PURPA § 210(h)(2)(B) permits <u>an electric utility such as Niagara</u> to maintain a private action against a state regulatory authority such as the PSC, provided the utility first satisfies certain administrative prerequisites." (emphasis added)); <u>Connecticut Valley Elec. Co. v. Fed. Energy Regulatory Comm'n</u>, 208 F.3d 1037, 1043 (D.C. Cir. 2000) ("[I]f a private party petitions the Commission [under § 210(h)(2)(B)] to initiate an enforcement action against a PUC and the Commission declines, then that party may itself sue the PUC in federal district court to force implementation of the regulations."). Because Plaintiffs are not "electric utilit[ies], qualifying cogenerator[s], or qualifying small power producer[s]," their claims do not fall under § 210(h)(2)(B), and exhaustion is not required.

Accordingly, the Court finds that the three-year statute of limitations applies and began to run on August 16, 2010, when the PUC Defendants issued their Order.  Plaintiffs' claims are thus barred by the statute of limitations, and the Court need not reach Defendants' arguments concerning standing and quasi-judicial immunity.

14

III. Conclusion

For the foregoing reasons, Defendants' Motions to Dismiss (ECF Nos. 14 and 21) are hereby GRANTED.

IT IS SO ORDERED.

/s/ William E. Smith
_____
William E. Smith
Chief Judge
Date: July 7, 2016